IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THADDEUS JIMENEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CITY OF CHICAGO, Chicago Police Detectives JEROME BOGUCKI, MARK SANDERS, RAYMOND SCHALK, and F. MONTILLA, Chicago Police Officers LAWRENCE RYAN and ROBERT WHITEMAN, and as-yet unknown City of Chicago Employees, | ) ) ) ) ) ) ) ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, THADDEUS JIMENEZ, by his attorneys, LOEVY & LOEVY, VALOREM LAW GROUP, and THE MACARTHUR JUSTICE CENTER, NORTHWESTERN UNIVERSITY SCHOOL OF LAW, files this Complaint against Defendants, CITY OF CHICAGO, Chicago Police Detectives JEROME BOGUCKI, Star # 20668, MARK SANDERS, Star # 20715, RAYMOND SCHALK, Star # 20718, and F. MONTILLA, Star # 20778, Chicago Police Officers LAWRENCE RYAN, Star # 11003, and ROBERT WHITEMAN, Star # 17159, and as-yet unknown City of Chicago Employees (collectively, the "Defendant Officers"), and states as follows:

**Introduction**

1. Plaintiff Thaddeus Jimenez spent 16 years, 2 months and 28 days in prison for a murder that he did not commit. Arrested at only 13 years of age, he was wrongfully convicted and sentenced to 45 years for the first-degree murder of Eric Morro. Mr. Jimenez's wrongful

conviction rested solely on fabricated evidence and false testimony that Defendants manipulated and coerced.

2. Now exonerated, and having been granted a Certificate of Innocence, Mr. Jimenez brings this lawsuit to redress the injustice that was inflicted upon him.

**Jurisdiction and Venue**

3. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**The Parties**

6. Plaintiff Thaddeus Jimenez is 30 years old. He lives in Chicago, Illinois. At the time of the wrongful conviction described herein, Mr. Jimenez was 13 years old and a middle school student at the Jahn School.

7. At all relevant times, Defendants Jerome Bogucki, Mark Sanders, Raymond Schalk, and F. Montilla were detectives with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of their employment.

8. At all relevant times, Defendants Lawrence Ryan and Robert Whiteman were Chicago Police Officers employed by Defendant City of Chicago and acting within the scope of their employment.

9. Defendants Bogucki, Sanders, Schalk, Montilla, Ryan, and Whiteman are referred to collectively as the "Defendant Officers."

10. The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

## Background

11. Mr. Jimenez was born in Chicago in 1979. He and his sister were raised primarily by their single mother.

12. The night of February 3, 1993 was a school night for 13-year-old Mr. Jimenez. As he had done on many prior occasions, Mr. Jimenez had dinner and slept over at his grandmother's house, surrounded by aunts, uncles and cousins.

13. At approximately 4 a.m., the Defendant Officers woke Mr. Jimenez from his slumber and arrested him for the murder of a 19-year-old named Eric Morro. The Defendant Officers took Mr. Jimenez from his grandmother's home and drove him to the police station, where he denied any knowledge of, or involvement in, the murder. As the evidence would show, Mr. Jimenez had absolutely nothing to do with the murder with which he was charged.

## The Crime At Issue

14. Earlier that evening, 19-year-old Eric Morro was shot and killed while walking down Belmont Avenue with his 14-year-old friend, Larry Tueffel.

15. As Larry told the Defendant Officers, he and Mr. Morro were approached by two boys on their walk. The boys confronted Mr. Morro about a debt he allegedly owed someone named "Leo"; the argument escalated, and one of the boys pulled out a gun and fatally shot Mr. Morro. Larry gave the Defendant Officers physical descriptions of both boys, and said he thought he recognized the non-shooter from his school.

16. Larry was walking with Mr. Morro when the boys first approached them, and was standing next to Mr. Morro when the shooting occurred. Larry was the only eyewitness to the shooting who had the opportunity to see the boys' faces.

17. The Defendant Officers identified other individuals who were in the vicinity of the shooting when it took place. Not one of those alleged eyewitnesses saw the boys' faces. None of them could identify the boys when they were initially interviewed by the Defendant Officers.

**The False Case Against Plaintiff**

18. In the early morning hours of February 4, 1993, the Defendant Officers allegedly received a phone call suggesting Mr. Jimenez's involvement in the shooting. The Defendant Officers proceeded to focus their sights singularly on Mr. Jimenez.

19. Rather than continue to do the police work necessary to properly solve the crime, the Defendant Officers instead conspired amongst themselves and with others to close the case as quickly as possible, working to prove the false hypothesis that Mr. Jimenez was guilty of the crime.

20. No physical evidence tied Mr. Jimenez to the crime. Nor was any incriminating evidence of any kind ever discovered in his possession. Moreover, Larry's description of the shooter bore no resemblance to Mr. Jimenez.

21. To overcome those glaring deficiencies, the Defendant Officers manufactured "evidence" that falsely implicated Mr. Jimenez. This fabrication of evidence included, but was not limited to, unlawfully manipulating witnesses to falsely implicate Mr. Jimenez by means of improper suggestiveness and outright coercion, all in violation of Mr. Jimenez's constitutional rights.

4

22. For example, on February 4, 1992, at approximately 2 a.m. (just 8 hours after the shooting), two or more of the Defendant Officers went to the home of 14 year-old Larry Tueffel, where they woke him up, took him from his home, and drove him to the police station. Over the course of several hours, while Larry was confined in a windowless interrogation room, without his parents and without counsel, the Defendant Officers yelled at Larry, told him that his denials that Mr. Jimenez was the shooter were lies, threatened him, and coerced him to implicate Mr. Jimenez in the shooting.

23. As a result of this improper and undue pressure, inflicted on a 14-year-old in the middle of the night and mere hours after he had seen his close friend murdered, Larry falsely implicated Mr. Jimenez as Eric Morro's shooter. Larry Tueffel would not have falsely inculpated Mr. Jimenez but for the Defendant Officers' misconduct. In addition, the Defendant Officers' police report simply noted that Larry had identified Mr. Jimenez as the shooter, intentionally omitting the Defendant Officers' extensive coercive interrogation that led to the identification.

24. To further build the false case against him, the Defendant Officers procured a fraudulent identification of Mr. Jimenez using unduly suggestive and otherwise improper line-up identification procedures. For example, at the time of the shooting, Tina Elder was standing at some distance down Belmont with her 4-year-old daughter. She was also eight-months pregnant at the time. The police did not obtain a statement from her at the scene of the crime, but nevertheless brought her in to view a police lineup that included Mr. Jimenez. Before Ms. Elder was taken to view the line-up, one or more of the Defendant Officers interviewed her about what she had witnessed the night before. She described the events that she had seen, but informed the Defendants that she had not gotten a good look at, and could not describe, the shooter.

25. After Ms. Elder informed the officers that she could not describe the shooter, one or more of the Defendant Officers seated her at a desk containing two photographs: one of the victim, and one of Mr. Jimenez. No other photographs were shown to her. Immediately thereafter, Ms. Elder was taken in to view the line-up and was asked to identify the shooter; she identified Mr. Jimenez. Ms. Elder would not have falsely inculpated Mr. Jimenez but for the Defendant Officers' misconduct prior to the line-up. In addition, the Defendant Officers' police report failed to document this manipulation.

26. Finally, the Defendant Officers deliberately and affirmatively failed to investigate and develop information that would have established the guilt of true perpetrator of the murder. Among the evidence that the Defendant Officers ignored and/or suppressed was the fact that a co-defendant, Victor Romo, admitted to having been present with the shooting offender, but repeatedly and specifically refuted the Defendants Officers' statements to him that Mr. Jimenez was the shooter. Victor Romo told the Defendant Officers that he had been walking that day with a boy named Juan Carlos Torres and that Juan Carlos Torres, not Mr. Jimenez, was the shooter. Despite repeated attempts by one or more of Defendant Officers to get Victor Romo to state that Mr. Jimenez was the shooter, Victor was firm in his identification of Juan Carlos Torres as the shooter.

27. Indeed, within days of the shooting, Juan Carlos Torres confessed on tape to having committed the murder. The Defendant Officers were told about that tape-recorded confession, but failed to act upon it. Later, the tape-recorded confession was provided directly to the Defendant Officers, but they intentionally and affirmatively failed to investigate and develop evidence related to the tape-recorded confession.

28. In carrying out the above-mentioned activities, the Defendant Officers, acting individually and in conspiracy with each other and others, coached and manipulated witnesses, and then withheld from the prosecutors the details of how they had done so.

29. In carrying out the above-mentioned activities, the Defendant Officers, acting individually and in conspiracy with each other and others, ignored and failed to pursue evidence that was readily available to them that established Mr. Jimenez's innocence and Mr. Torres's guilt.

30. As complaining witnesses, one or more of the Defendant Officers also testified falsely at Mr. Jimenez's criminal trial about Mr. Jimenez's purported guilt and about the veracity of other witnesses' prior statements.

## The Malicious Prosecution

31. In September 1997, Mr. Jimenez stood trial for the murder of Mr. Morro.

32. The description of the shooter that the Defendant Officers received at the scene did not match Mr. Jimenez. No physical evidence ever linked Mr. Jimenez to the crime.

33. Nevertheless, as a proximate result of the above-described misconduct on the part of the Defendant Officers, Mr. Jimenez was convicted of the murder of Mr. Morro. But for the Defendant Officers' misconduct, Mr. Jimenez would have been neither prosecuted nor convicted.

34. On December 10, 1997, Mr. Jimenez was sentenced to 45 years in prison. All post-trial motions and appeals were denied.

## Plaintiff's Exoneration

35. Throughout his incarceration, Mr. Jimenez maintained his innocence and pursued all possible avenues to prove it.

36. In 2007, the State's Attorney's Office agreed to re-investigate Mr. Jimenez's case. Two years later, in 2009, the State's Attorney's Office concluded that Mr. Jimenez was innocent. The State joined Mr. Jimenez in approaching the Circuit Court of Cook County to vacate his conviction.

37. On May 1, 2009, Mr. Jimenez's conviction and sentence were vacated.

38. On May 19, 2009, another individual – whose confession had been presented to the Defendant Officers in 1993 – was indicted for the murder of Eric Morro.

39. On June 3, 2009, the Chief Judge of the Criminal Division of the Circuit Court of Cook County granted Mr. Jimenez a Certificate of Innocence.

### Plaintiff's Damages

40. Mr. Jimenez spent 16 years, 2 months and 28 days in prison for a crime he did not commit. Mr. Jimenez must now attempt to make a life for himself outside of prison without the benefit of nearly two decades of life experiences – including all of his adolescence and young adulthood – which normally equip adults for that task.

41. Additionally, the emotional pain and suffering caused by losing these 16 formative years has been substantial. Mr. Jimenez was taken from his family when he was just 13 years old. During his incarceration, Mr. Jimenez was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to graduate from middle school with his friends, to share holidays, births, funerals, and other life events with loved ones, the opportunity to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

42. As a result of the foregoing, Mr. Jimenez has suffered tremendous damage, including physical harm and mental suffering, all proximately caused by the Defendant Officers' misconduct.

### Count I -- 42 U.S.C. § 1983
### Violation of Due Process

43. Each paragraph of this Complaint is incorporated as if restated fully herein.

44. As described more fully above, all of the Defendant Officers, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

45. In the manner described more fully above, the Defendant Officers and/or other City of Chicago employees and agents deliberately withheld exculpatory evidence – such as the police manipulation of witnesses that resulted in fabricated witness testimony – and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

46. The Defendant Officers' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

47. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

48. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

49. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department employees and agents regularly failed to disclose exculpatory evidence to criminal defendants, pursued wrongful convictions through profoundly flawed investigations and coerced testimony, and otherwise violated due process in a similar manner to that alleged herein. The above-described widespread practices, which were so well-settled as to constitute *de facto* policy in the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

50. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

### Count II -- 42 U.S.C. § 1983
### Failure to Intervene

51. Each paragraph of this Complaint is incorporated as if restated fully herein.

52. In the manner described above, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

53. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

54. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

55. The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the City of Chicago's policy and practice in the manner described in the preceding paragraphs.

### Count III -- 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

56. Each paragraph of this Complaint is incorporated as if restated fully herein.

57. After the murder of Mr. Morro, the Defendant Officers reached an agreement amongst themselves to frame Plaintiff for the crime and to thereby deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

58. Independently, before and after Plaintiff's conviction, the Defendant Officers further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

59. In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

60. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise a willful participant in joint activity.

61. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered physical harm, financial damages, and severe emotional distress and anguish.

62. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

63. The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs.

**Count IV -- State Law Claim**
**Malicious Prosecution**

64. Each paragraph of this Complaint is incorporated as if restated fully herein.

65. The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

66. The Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

67. Moreover, the Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which the Defendant Officers possessed evidence to support probable cause to believe that an individual other than Mr. Jimenez – a man who has now been indicted for the murder – had committed the crime. These judicial proceedings against Mr. Jimenez were instituted and continued maliciously, resulting in injury.

68. Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured. The Defendant Officers also fabricated evidence by coercing false inculpatory testimony from actual and purported eyewitnesses. The Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Plaintiff.

69. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

70. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

## Count V -- State Law Claim
## Intentional Infliction of Emotional Distress

71. Each paragraph of this Complaint is incorporated as if restated fully herein.

72. The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendant Officers' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

73. As a direct and proximate result of the Defendant Officers' actions, Plaintiff suffered and continues to suffer emotional distress.

74. Because the Defendant Officers acted within the scope of their employment with the City of Chicago, Defendant City of Chicago is liable as their employer for any resulting damages and any award of attorneys' fees.

## Count VI -- State Law Claim
## Civil Conspiracy

75. Each paragraph of this Complaint is incorporated as if restated fully herein.

76. As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

77. In furtherance of the conspiracy, the Defendant Officers committed overt acts and were otherwise willful participants in joint activity.

78. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

79. As a proximate result of the Defendant Officers' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### Count VII -- State Law Claim
### Respondeat Superior

80. Each paragraph of this Complaint is incorporated as if restated fully herein.

81. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment and under color of law.

82. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### Count VIII - State Law Claim
### Indemnification

83. Each paragraph of this Complaint is incorporated as if restated fully herein.

84. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

85. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, THADDEUS JIMENEZ, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, Chicago Police

Detectives JEROME BOGUCKI, MARK SANDERS, RAYMOND SCHALK, and F. MONTILLA, Chicago Police Officers LAWRENCE RYAN and ROBERT WHITEMAN, and as-yet unknown City of Chicago Employees, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, THADDEUS JIMENEZ, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                              Respectfully submitted,

                              THADDEUS JIMENEZ

                    By:   /s/ Stuart J. Chanen
                            One of his attorneys

| Arthur Loevy | Stuart J. Chanen | Locke E. Bowman |
|---|---|---|
| Jon Loevy | Lisa Castle | Roderick MacArthur Justice Center |
| Russell Ainsworth | Valorem Law Group | Northwestern University School of Law |
| Rachel Steinback | 35 E. Wacker Dr. | 357 E. Chicago Ave. |
| LOEVY & LOEVY | 30th Floor | Chicago, IL 60611 |
| 312 North May St. | Chicago, IL 60601 | (312) 503-0844 |
| Suite 100 | (312) 676-5480 | |
| Chicago, IL 60607 | | |
| (312) 243-5900 | | |