1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8
9

THADDEUS JIMENEZ,

          Plaintiff,

10

      v.

11
12
13
14

CITY OF CHICAGO, Chicago Police
Detectives JEROME BOGUCKI, MARK
SANDERS, RAYMOND SCHALK, F.
MONTILLA, Chicago Police Officers
LAWRENCE RYAN and ROBERT
WHITEMAN, and as-yet unknown City of
Chicago Employees,

          Defendants.

15

NO. _____

(Northern District of Illinois
Case No. 09-cv-8081)

POLICE OFFICER
DEFENDANTS' MOTION FOR
ORDER DIRECTING THIRD-
PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS

**NOTE ON MOTION CALENDAR:
MARCH 18, 2010**

16
17

### Relief Requested

18

      Defendants Jerome Bogucki, Mark Sanders, Raymond Schalk, Frank Montilla,

19

Lawrence Ryan and Robert Whiteman, by their undersigned attorneys, hereby move

20

Court for the entry of an order directing third-party Carolyn Nielsen to preserve the

21

documents that were requested in a recently served subpoena *duces tecum* pursuant to

22

Fed. R. Civ. P. 45. In support of their motion, defendants state as follows:

23

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS - 1



STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

## Factual Background

1.    This matter arises from a civil case brought in the Northern District of Illinois. On December 31, 2009, plaintiff Thaddeus Jimenez sued the defendants (retired Chicago detectives and police officers) alleging due process, failure to intervene, conspiracy, malicious prosecution and intentional infliction of emotional distress claims. Mr. Jimenez was convicted of murder back in 1994 when he was 13 years old. He was released from prison in May 2009 and now claims that the defendants fabricated evidence and coerced witnesses to testify against him.

2.    At his criminal trial, the State introduced into evidence several letters Jimenez wrote to his girlfriend wherein he threatened to kill his friend Larry Tueffel who identified him to police as the person who shot a man named Eric Morro. The letters were allowed into evidence to show Jimenez 's consciousness of guilt. (An example of one such letter is attached hereto as Exhibit A). In that letter Jimenez states: "Oh, this Saturday on the 8th im going to call John Spaw, I don't if you remember him but he's the one Royal who drives a motorcycle and lives on Kedzie. Im going to tell him to stop Larry from goin to court. In anyway he has to, even if he has to kill him. It won't mean anything to me. And it only takes the pull of a trigger." [sic]

### Subpoena To Carolyn Nielsen For Documents Identified On Her Blog

3.    Defendants deny the serious allegations Jimenez has made against them. In investigating this case and Jimenez, defendants' attorneys came across a blog written by a woman named Carolyn Nielsen. Ms. Nielsen is currently a journalism professor at Western Washington University. Back in 1994, Ms. Nielsen was a journalism student at Northwestern University and she wrote some articles about

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS - 2

Jimenez 's trial and conviction. In reading Ms. Nielsen's blog, defendants' attorneys came across a May 4, 2009 blog post titled "The Exoneration of Thaddeus Jimenez." (A copy of that blog post is attached hereto as Exhibit B). In that blog post, Ms. Nielsen states: *"More than 14 years later, I still have my original draft, my notes and letters TJ sent me when I interviewed him via email."*

4.      After reading that blog post, defendants prepared and served upon Ms. Neilsen a subpoena *duces tecum* requesting Ms. Neilsen to produce those same documents i.e., her notes and letters received from Jimenez. (A copy of the subpoena – issued by this Court – is attached hereto as Exhibit C). The letters Ms. Neilsen received from Jimenez are highly relevant to the pending action as they may contain inculpatory evidence, similar to the letters that were admitted into evidence at Jimenez 's criminal trials.

5.      On March 11, 2010, Ms. Nielsen was served with a copy of the subpoena. That same day she contacted lawyers representing Jimenez. Defendants do not know what was discussed between Ms. Nielsen and Jimenez 's attorneys. (Defendants know this because Jimenez 's lawyers complained they had not received a copy of the subpoena to Ms. Nielsen).

**Carolyn Nielsen Contacts Defense Counsel Andrew Hale**

6.      On March 16, 2010, Ms Nielsen called one of defendants' attorneys, Andrew Hale, and requested several more weeks to respond to the subpoena (the current return date is March 26, 2010). As set forth in the affidavit of Mr. Hale (attached hereto as Exhibit D), when asked about whether she possessed any responsive documents, Ms. Nielsen became very evasive, claiming she was not sure what she had.

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS  - 3

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

7.     At first, Ms. Nielsen clamed she was unable to look at the boxes that were in her garage. Then, later in the conversation, Ms. Nielsen claimed that she had recently remodeled her house and was not sure if he had any documents and was not sure if the documents were in boxes or file cabinets. Mr. Hale did not confront Ms. Nielsen with the fact that her May 4, 2009 blog post boasted about her retention of her original notes and letters received from Jimenez. When asked specifically about whether she had any letters from Jimenez, Ms. Nielsen claimed she was confused by the scope of the subpoena and did not know what was meant by the name "Jimenez." The only document Ms. Nielsen admitted to having was her original story that she wrote about the case. Mr. Hale ended the conversation by telling Ms. Nielsen that he would get back to her about her request for an extension.

### Carolyn Nielsen Materially Altered Her May 4, 2009 Blog Post

8.     After hanging up, Mr. Hale was troubled by Ms. Nielsen's evasiveness and failure to admit possessing any responsive documents. Mr. Hale then went on the Internet and pulled up Ms. Nielsen's blog to re-read her May 4, 2009 blog post. To Mr. Hale's surprise and concern, the following sentence had been deleted from the entry: *"More than 14 years later, I still have my original draft, my notes and letters TJ sent me when I interviewed him via mail."* (A copy of the blog post as it currently appears is attached hereto as Exhibit E).

9.     Based on the fact that Ms. Nielsen's original May 4, 2009 blog entry indicates she still possesses her original notes and the letters received from Jimenez, and that Ms. Nielsen was so evasive with Mr. Hale on the phone and has now deleted any reference to possessing her notes or letters from Jimenez , defendants are

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS  - 4

legitimately concerned that Ms. Nielsen may not be preserving these documents for production in the pending lawsuit. The fact that Ms. Nielsen, a journalism professor, has now materially altered her blog entry – apparently after receiving defendants' subpoena – to delete any reference to possessing these key documents is very troubling.

**Carolyn Nielsen Should Be Ordered To Preserve The Documents**

10.    Federal courts have the implied or inherent power to issue preservation orders as part of their general authority " 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Pueblo of Laguna v. United States*, 60 Fed.Cl. 133, 135-36 (2004) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)).

11.    Here, the fact that Ms. Nielsen has deleted the sentence from her blog where she admits to possessing these key documents supports defendants' concern that Ms. Nielsen needs to be ordered to preserve her responsive documents. What would be the purpose of deleting this sentence other than to hide the fact that she still possesses her original notes and letters received from Jimenez?  Ms. Nielsen cannot claim, for example, that she deleted this sentence because it is no longer accurate, as she did not tell Mr. Hale that she no longer possesses any responsive documents. Instead, Ms. Nielsen was extremely vague and evasive about what documents she had and where any such documents were located.

12.    Courts must also evaluate the value of the evidence seeking to be preserved, for example if it is irreplaceable or "one-of-a-kind." *Capricorn Power Co., Inc.,* 220 F.R.D. at 435. Here, the documents at issue are one of a kind.

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS  - 5

1   13.   Defendants cannot obtain these documents from any other source. Based

2   on the facts of this case, a preservation order is warranted.

3   WHEREFORE, defendants Jerome Bogucki, Mark Sanders, Raymond Schalk,

4   Frank Montilla, Lawrence Ryan, and Robert Whiteman respectfully request that this

5   Court enter an order directing third-party Carolyn Nielsen to preserve all documents

6   responsive to defendants' subpoena *duces tecum* and to produce all such documents

7   by the return date of March 26, 2010.

8   Respectfully submitted this 17th day of March, 2010,

9   STAFFORD FREY COOPER, P.C.

10

11   By:  /s/ Anne Bremner via ECF
     Anne Bremner, WSBA #13269
12   James R. Lynch, WSBA #39274
     Safford Frey Cooper
13   3100 Two Union Sqaure
     601 Union Street
14   Seattle, Washington, 98101
     206-623-9900

15   Andrew M. Hale
     Avi T. Kamionski
16   Christina Liu
     Andrew M. Hale & Associates
17   53 West Jackson, Suite 1800
     Chicago, Illinois 60604
18   Phone: (312) 341.9646
     Fax: (312) 341.9656

19   Counsel for Defendants

20

21

22

23

POLICE OFFICER DEFENDANTS' MOTION FOR ORDER
DIRECTING THIRD-PARTY CAROLYN NIELSEN TO
PRESERVE DOCUMENTS - 6



**EXHIBIT INDEX**

A.    Letter from Thaddeus Jimenez to Elizabeth Heatley

B.    Copy of "The Exoneration of Thaddeus Jimenez" Blog Post, dated May 4, 2009, as of March 10, 2010.

C.    Subpoena duces tecum of Carolyn Nielsen, March 10, 2010.

D.    Affidavit of Andrew M. Hale

E.    Copy of "The Exoneration of Thaddeus Jimenez" Blog Post, dated May 4, 2009, as of March 16, 2010.

**Exhibit A**



JIM03782

DO SOMETHING WILD!
29
COLLECT STAMPS

CHICAGO, IL 606
3 MAY
1993

Elizabeth Heatley
3630 N. Troy
Chicago Ill 60618

PEO. V. THADDEUS JIMENEZ
INDICTMENT NO. 93CR-14710
PEOPLE'S EXHIBIT NO. 20B

Shorty



Dear Liz,                              5/1/93

What's up girl? Nothin much over here. so hows life been treatin you? I'm doing alright I guess

so how come you havent wrote me a letter lately? Is it something I said? Or is it because theres someone new in your life, someone like Nelson? I just want to know why you havent wrote me lately.

so, did my mom tell you that the state changed my court date? They changed it to may tenth. So when you get this letter it should be may sixth. Three more Royals came on my section today, so now there's probley goin to be alot of shit goin on. Oh yeah, they told me that larry did not get shot and he's still testifying against me.

So on the 10th I want you to call my grandmother's



house to see what happend.

Here's the number→583-2279
The reason why I gave you
my grandma's number is because
my mom broke her phone
and she aint got a new one
yet.

God, I hope I get out
soon. I pray every night that
I get out. I want you to
pray for me too, It could help
me.

Tommarro is visiting
day and my mom is going
to bring me a hole lot
of shit. She's goin to
bring me some of those little
hand held video games, and
a little nurf basket ball rim
with the two suckion cups
to hold it up and it has
that spunj ball. I admitt it,
I still have a little kid
in me. My mom aint even
supposed to ~~bring~~ this shit
up but she sneeks it up.



She's also goin to bring me
some new close for court.
Shes bringing me a new
cross colors pants and
a white turtle kneck. And
she's buying me some
new shoes for court too.
She just brought me
a pair ~~~~~ about 3
weeks ago.
Oh, this saturday on
the 8th im goin to call
John spaw, I dont if you
remember him but he's the
one Royal who drives a
motorcycle and lives on ~~~~
Kedzie. Im goin to tell him
to stop larry from goin
to court. In anyway he has
to, even if he has to kill
him. It wont mean anything
to me. And it only takes
the pull of a trigger.
And when/if you write
back tell me whats goin
on with danny and them.

JIM03785

2-7



Well babe,
I'm sorry this letter
is short but I have to
take a shower now so
I love and miss you a
hole lot.
love
always
your
master

P.S.
I have          T.J.
wet dreams
about you.
na ha ha    X X X X X
ha ha ha    O O O O O O O

p.s.s
I'm only
jokin but
I do think
about in
symilar ways.

JIM03786

28

**Exhibit B**

This is Google's cache of http://abovethefoldwwu.blogspot.com/2009/05/exoneration-of-thaddeus-jimenez.html. It is a snapshot of the page as it appeared on Feb 25, 2010 06:38:48 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: **letters interviews tj** These terms only appear in links pointing to this page: **jiminez**                    Text-only version

Share   Report Abuse   Next Blog»

# ABOVE THE FOLD
## ACADEMIC RESEARCH IN JOURNALISM

**MONDAY, MAY 4, 2009**

The Exoneration of Thaddeus Jimenez





This morning, I received the most memorable phone call of my journalism life. Thaddeus Jimenez (and his entire extended family via speaker phone) called me to say he had been released from prison and exonerated of his murder conviction. On May 1, he was released from prison after 16 years of incarceration. He went in at 13 and came out at 30. I first met **TJ** and his family in a Cook County Superior Court room during his trial. I was earning my master's at Northwestern University's

**MEDIA AND DIVERSITY LINKS**

Latinos and Media Project
Forum on Media Diversity

**ABOUT ME**



CAROLYN NIELSEN
BELLINGHAM, WA,
UNITED STATES

I began this blog as a way to share my research and connect with journalism and mass communications professors working on similar issues.

**VIEW MY COMPLETE PROFILE**

**THE JOURNAL OF SPANISH LANGUAGE MEDIA**

My journal article on Spanish-language radio consolidation in the United States

**POYNTER BLOG NETWORK » MEDIA NEWS**

Medill School of Journalism in 1994-1995 and was covering the courthouse for my legal affairs reporting class. **TJ** was facing a murder charge and a possible 50-year sentence. Still a relatively inexperienced





reporter, I sat in the courtroom between TJ's family and victim Eric Morro's family. Fourteen years later, I can still recall the tension and the tears.

**TJ** was 14 at the time of the trial and had been in jail since being arrested at age 13. I wrote two articles about him for my class and one was selected as the cover story of the Medill Monitor, the quarterly magazine for the grad school. The article raised questions about trying him as an adult, about the motives of the "eye witnesses," and about a suppressed confession tape on which the man now in custody in connection with the killing said he had shot Morro and someone else had been implicated.

Even to my inexperienced ears, the case sounded full of reasonable doubt, at minimum. I tried, without success, to interest the Chicago Tribune, Sun Times and Chicago Reader in the story. I covered many horrible trials in that courthouse that quarter, but this is the one that stuck with me. More than 14 years later, I still have my original draft, my notes and **letters TJ** sent me when I interviewed him via mail.

I kept in touch with **TJ** and his family over the years. I wrote to him in prison on and off and sent him almanacs (his request) in prison. I talked to his mom on the phone periodically. It was the only instance in my journalism career in which I switched from reporter to advocate. At that point, I knew I could no longer write objectively about the case. Yesterday, I came home to a message from a team of lawyers at Center

BLOG ARCHIVE

▶ 2010 (3)

▼ 2009 (46)

  ▶ October (2)

  ▶ September (1)

  ▶ August (1)

  ▶ July (1)

  ▶ June (1)

  ▼ May (8)

    Feedback: the gift that keeps on giving

    Vicky Jimenez, TJ Jimenez and me in Chicago on ...

    BBC documentary about TJ's case

    Story comes full circle

    It's tough to be a source

    Tidy little boxes

    Back to the beginning

    The Exoneration of Thaddeus Jimenez

on Wrongful Convictions. I called them, heard **TJ** had been released from prison on Friday and immediately began crying. I knew the center had taken on TJ's case in 2005 and I knew the primary witness, the man walking next to Morro, had recanted his story. But it had been a long time since I talked to the center's legal team. They had called me in the beginning after reading the Monitor story. As it turns out, their work led to most of the key witnesses recanting their testimony. After they presented this new information to the state's attorney's office, it took a year to get that office to look at it.

Today, I read that the lawyers at Chicago firm Katten Muchin Rosenmann LLP logged more than 1,200 pro bono hours on this case. I was floored. I had no idea any law firm committed that amount of resources to a case for free.

The lawyers who worked on this case surmounted so many obstacles and persevered over four years to bring about this conclusion.

I played only a minuscule role, but the lawyers at the center told me that my Monitor article helped in their decision to take on TJs case. I have never felt so proud as a journalist.

All day, I have been reading articles and watching **interviews**.

I plan to visit **TJ** in two weeks.

I shared this story with my students in class today and although I tried my best, I did get choked up. I never knew that a class assignment from October 1994 would someday lead to this point.

Sun-Times story
ABC Chicago story
Chicago Tribune story
press conference video
Sydney Morning Herald, Australia
The story made the Italian news, the Turkish news, the two Dutch newspapers, the Polish news, , the Swiss news, the French news,

POSTED BY CAROLYN NIELSEN AT 2:42 PM

**0 COMMENTS:**

**POST A COMMENT**

▶ April (2)
▶ March (3)
▶ February (7)
▶ January (20)

MORE MEXICO NEWS



LEARN SPANISH - WORD OF THE DAY

Leverage Social Media                Learn

Above the fold: The Exoneration of Thaddeus Jimenez

3/16/10 8:34 PM

**Comment as:** Select profile...

( Post Comment )  ( Preview )

Newer Post                    Home                    Older Post

Subscribe to: Post Comments (Atom)

NEWS MAP

Click the map for the news.



**Exhibit C**

≤≤AO88. (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Western _____ DISTRICT OF _____ Washington

Thaddeus Jimenez

V.

City of Chicago, et al.

### SUBPOENA IN A CIVIL CASE

Case Number:[1]  09 c 08081

TO:  Carolyn Nielsen
Western Washington University-Department of Journalism
516 High Street
Bellingham, WA 98225

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See document rider attached hereto as Exhibit A.

| PLACE  Andrew M. Hale & Assoc. 53 W. Jackson Blvd., Suite 1800 Chicago, IL 60604 | DATE AND TIME  3/24/2010 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  3/10/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew Hale; Andrew M. Hale & Assoc. 53 W. Jackson Blvd., Suite 1800 Chicago, IL 60604
(312) 341-9646

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

DOCUMENTS REQUESTED – EXHIBIT A

DEFINITIONS:

1. "Jimenez" shall refer or relate to Thaddeus (TJ) Jimenez, or anyone acting on his behalf.

DOCUMENTS REQUESTED:

1. All letters received from Jimenez.
2. All documents received from Jimenez.
3. All notes relating to Jimenez.
4. All articles you have written about Jimenez including, but not limited to, your article in Northwestern University's "The Monitor."
5. All documents relating to Jimenez or his criminal trials.
6. All media articles regarding Jimenez including, but not limited to, the Chicago Sun Times article dated 11-23-94.

**Exhibit D**

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| THADDEUS JIMENEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | Case No. 09-cv-8081 |
| Detectives JEROME BOGUCKI, MARK | ) | |
| SANDERS, RAYMOND SCHALK, | ) | |
| F. MONTILLA, Chicago Police | ) | |
| Officers LAWRENCE RYAN and | ) | |
| ROBERT WHITEMAN, and as-yet | ) | |
| unknown City of Chicago | ) | |
| Employees, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ANDREW M. HALE

I, Andrew M. Hale, depose and state as follows:

1. I am an attorney licensed to practice law in the State of Illinois.

2. I am one of the attorneys representing defendants Jerome Bogucki, Mark Sanders, Raymond Schalk, Frank Montilla, Lawrence Ryan and Robert Whiteman in a case styled *Thaddeus Jimenez v. City of Chicago, et al.*, Case No. 09 CV 8081, currently pending in the United States District Court for the Northern District of Illinois before the Honorable Matthew Kennelly.

3. In doing some research on this case, I came across a blog post dated May 4, 2009 written by Carolyn Neilsen, a journalism professor at Western Washington University in Bellingham, Washington.

4. In that blog post, Ms. Neilsen talks about her prior involvement in reporting on Mr. Jimenez's criminal trial when she was earning her master's degree at Northwestern University's Medill School of Journalism in 1994-95.

5. In her blog post discussing Jimenez's eventual exoneration, Ms. Neilsen states: **"More than 14 years later, I still have my original draft, my notes and letters TJ sent me when I interviewed him via mail."**

6.  After reading this blog post, I prepared a subpoena duces tecum to Ms. Neilsen requesting these same documents, i.e., her notes and letters relating to her interview of Mr. Jimenez .

7.  On March 11, Ms. Neilsen was served with a copy of the subpoena. That same day, she contacted attorneys representing Jimenez and apparently discussed the subpoena with them. I know this because I received an email message from one of Jimenez 's attorneys on March 11 stating that Ms. Neilsen had contacted plaintiff's counsel and plaintiff's counsel requested a copy of the subpoena (which had been sent in the mail but not received yet).

8.  On Tuesday, March 16, I received a telephone call from Ms. Neilsen asking for more time to respond to my subpoena. (The current return date is March 26, 2010). When I began asking Ms. Neilsen some general questions, like if she had any responsive documents, she became very evasive. At one point she told me that she had not been able to get into the boxes in her garage. At another point she told me that he had remodeled her house and was not sure if her documents were in boxes or file cabinets. She would not confirm having any responsive documents at all, other than the original story she wrote about the case.

9.  When I specifically asked her about letters she received from Mr. Jimenez , she claimed she was confused about the scope of the subpoena requesting letters from "Jimenez " despite the fact that "Jimenez " was defined as referring to Thaddeus (TJ) Jimenez , or anyone acting on his behalf. I asked Ms. Neilsen if she had spoken to any of Jimenez 's attorneys about the subpoena and she responded that she did not feel "comfortable" discussing that with me.

10. During this phone call I did not confront Ms. Neilsen with the fact that I had read her blog post wherein she admitted still having possession of her notes and letters relating to her interviews of Mr. Jimenez . I told Ms. Neilsen I would get back to her regarding her request for additional time to respond to the subpoena.

11. After hanging up with Ms. Neilsen, I was concerned about her evasiveness. I went to the internet and pulled up the blog post that lead me to subpoena her records in the first place. I was surprised, as I could no longer find the sentence wherein Ms. Neilsen stated **"More than 14 years later, I still have my original draft, my notes and letters TJ sent me when I interviewed him via email."** That sentence is now missing from the current blog entry.

12. Based on the very evasive nature of my phone call with Ms. Neilsen, and the fact that she has now deleted any reference to possessing her notes and letters relating to Jimenez , I am concerned that she may not be preserving the documents that were requested in defendants' subpoena.

2

Pursuant to 28 U.S.C. section 1746 I, Andrew Hale, declare under penalty of perjury that the enclosed affidavit is true and correct.

<u>s/ Andrew M. Hale</u>
Andrew M. Hale

**Exhibit E**

Case: 1:09-cv-08081 Document #: 33 Filed: 03/17/10 Page 28 of 32 PageID #:90

3/17/10 5:29 PM

Share    Report Abuse    Next Blog»

# ABOVE THE FOLD
## ACADEMIC RESEARCH IN JOURNALISM

MONDAY, MAY 4, 2009

## The Exoneration of Thaddeus Jimenez





This morning, I received the most memorable phone call of my journalism life. Thaddeus Jimenez (and his entire extended family via speaker phone) called me to say he had been released from prison and exonerated of his murder conviction. On May 1, he was released from prison after 16 years of incarceration. He went in at 13 and came out at 30. I first met TJ and his family in a Cook County Superior Court room during his trial. I was earning my master's at Northwestern University's Medill School of Journalism in 1994-1995 and was covering the courthouse for my legal affairs reporting class. TJ was facing a murder charge and a possible 50-

MEDIA AND DIVERSITY LINKS

Latinos and Media Project
Forum on Media Diversity

ABOUT ME



**CAROLYN NIELSEN BELLINGHAM, WA, UNITED STATES**

I began this blog as a way to share my research and connect with journalism and mass communications professors working on similar issues.

VIEW MY COMPLETE PROFILE

THE JOURNAL OF SPANISH LANGUAGE MEDIA

My journal article on Spanish-language radio consolidation in the United States

POYNTER BLOG NETWORK » MEDIA NEWS



3/17/10 5:29 PM

year sentence. Still a relatively inexperienced



reporter, I sat in the courtroom between TJ's family and victim Eric Morro's family. Fourteen years later, I can still recall the tension and the tears.

TJ was 14 at the time of the trial and had been in jail since being arrested at age 13. I wrote two articles about him for my class and one was selected as the cover story of the Medill Monitor, the quarterly magazine for the grad school. The article raised questions about trying him as an adult, about the motives of the "eye witnesses," and about a suppressed confession tape on which the man now in custody in connection with the killing said he had shot Morro and someone else had been implicated.

Even to my inexperienced ears, the case sounded full of reasonable doubt, at minimum. I tried, without success, to interest the Chicago Tribune, Sun Times and Chicago Reader in the story. I covered many horrible trials in that courthouse that quarter, but this is the one that stuck with me.

I kept in touch with TJ and his family over the years. I wrote to him in prison on and off and sent him almanacs (his request) in prison. I talked to his mom on the phone periodically.

Yesterday, I came home to a message from a team of lawyers at Center on Wrongful Convictions. I called them, heard TJ had been released from prison on Friday and immediately began crying. I knew the center had taken on TJ's case in 2005 and I knew the primary witness, the man walking next to Morro, had recanted his story. Their work led to most of the key witnesses recanting their testimony. After they presented this new information to the state's attorney's office, it took a year to get that office to look at it.

Today, I read that the lawyers at Chicago firm Katten Muchin Rosenmann LLP logged more than 1,200 pro bono hours on this case. I was floored. I had no idea any law firm committed that amount of

BLOG ARCHIVE

► 2010 (4)

▼ 2009 (46)

　► October (2)

　► September (1)

　► August (1)

　► July (1)

　► June (1)

　▼ May (8)

　　Feedback: the gift that keeps on giving

　　Vicky Jimenez, TJ Jimenez and me in Chicago on ...

　　BBC documentary about TJ's case

　　Story comes full circle

　　It's tough to be a source

　　Tidy little boxes

　　Back to the beginning

　　The Exoneration of Thaddeus Jimenez

　► April (2)

　► March (3)

　► February (7)

　► January (20)

resources to a case for free.

The lawyers who worked on this case surmounted so many obstacles and persevered over four years to bring about this conclusion.

I played only a minuscule role, but the lawyers at the center told me that my Monitor article helped in their decision to take on TJs case. I have never felt so proud as a journalist.

All day, I have been reading articles and watching interviews.

I plan to visit TJ in two weeks.

I shared this story with my students in class today and although I tried my best, I did get choked up.

Sun-Times story
ABC Chicago story
Chicago Tribune story
press conference video
Sydney Morning Herald, Australia
The story made the Italian news, the Turkish news, the two Dutch newspapers, the Polish news, , the Swiss news, the French news,

POSTED BY CAROLYN NIELSEN AT 2:42 PM 

## 0 COMMENTS:

## POST A COMMENT

MORE MEXICO NEWS



Earn your Master
Information Ass

LEARN SPANISH - WORD OF THE DAY

Get this widget          Learn

New Nexus One By Google
1GHz Processor, Voice IME, Apps &

Case: 1:09-cv-08081 Document #: 33 Filed: 03/17/10 Page 31 of 32 PageID #:93

3/17/10 5:29 PM

**Comment as:** Select profile...

( Post Comment )   ( Preview )

Newer Post                    Home                    Older Post

Subscribe to: Post Comments (Atom)

NEWS MAP

**Click the map for the news.**



**World News:** Go to NuZs.com for news by Continent and Region.

## 1 Trick of a tiny belly :
Cut down a bit of your belly every  Tin

FOLLOWERS

