**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THADDEUS JIMENEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 8081 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Dykema Gossett PLLC, for its answer to plaintiff's complaint, states:

**Introduction**

1.      Plaintiff Thaddeus Jimenez spent 16 years, 2 months and 28 days in prison for a murder that he did not commit.  Arrested at only 13 years of age, he was wrongfully convicted and sentenced to 45 years for the first-degree murder of Eric Morro.  Mr. Jimenez's wrongful conviction rested solely on fabricated evidence and false testimony that Defendants manipulated and coerced.

**ANSWER:**    Defendant City admits upon information and belief plaintiff was in custody or incarcerated for over 16 years in relation to his conviction for the February 3, 1993 murder of Eric Morro.  Based on police department reports, Defendant City admits plaintiff provided information to police indicating he was 13 years old at the time of his arrest on February 4, 1993.  Defendant City admits plaintiff was convicted in 1994 and 1997 and sentenced to a term of 45 years' imprisonment for the first degree murder of Eric Morro.  Defendant City admits Judge Paul Biebel, Jr., granted plaintiff a Certificate of Innocence on or about June 3, 2009, relative to the offenses for which he was convicted.  Defendant City denies the remaining allegations contained in paragraph 1.

2. Now exonerated, and having been granted a Certificate of Innocence, Mr. Jimenez brings this lawsuit to redress the injustice that was inflicted upon him.

**ANSWER:** Defendant City admits Judge Paul Biebel, Jr., granted plaintiff a Certificate of Innocence on or about June 3, 2009, relative to the offenses for which he was convicted. Defendant City admits plaintiff's complaint seeks damages, but it denies liability to plaintiff for any of the claims asserted in the complaint and/or the damages alleged therein. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 2.

## Jurisdiction and Venue

3. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:** Defendant City admits plaintiff's complaint includes claims that purport to invoke 42 U.S.C. §1983. Defendant City denies liability to plaintiff for any and all claims asserted in the complaint.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**ANSWER:** Defendant City admits this Court has jurisdiction over this action. Defendant City denies liability to plaintiff for any and all claims asserted in the complaint.

5. Venue is proper under 28 U.S.C. §1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER:** Defendant City admits venue is proper for plaintiff's claims in the United States District Court, Northern District of Illinois. Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois. Defendant City denies liability to plaintiff for any of the claims asserted in the complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 5.

**The Parties**

6.     Plaintiff Thaddeus Jimenez is 30 years old. He lives in Chicago, Illinois.  At the time of the wrongful conviction described herein, Mr. Jimenez was 13 years old and a middle school student at the Jahn School.

**ANSWER:**     Based on police department records and reports, Defendant City admits plaintiff

was 30 years old on December 31, 2009, and that in February 1993, he was 13 years old and

attending Jahn School.  Defendant City denies any liability to plaintiff based on the allegation of

a "wrongful conviction described herein."  Defendant City is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in

paragraph 6.

7.     At all relevant times, Defendants Jerome Bogucki, Mark Sanders, Raymond Schalk, and F. Montilla were detectives with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of their employment.

**ANSWER:**     Defendant City admits that, in February 1993, Defendants Jerome Bogucki,

Raymond Schalk, and F. Montilla were detectives and police officers employed by the Chicago

Police Department.  The United States Court of Appeals, Seventh Circuit, has determined that a

Chicago police officer, while engaged on police business, is "acting squarely within the scope of

his employment" unless he "commits a wrong designed to advance his purely private interests."

*Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).  To the extent the conduct alleged

against defendants Bogucki, Schalk, and/or Montilla in plaintiff's complaint is the same as or

closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be

deemed under *Wilson* to be within the officers' scope of employment.  Defendant City admits the

investigation of a homicide in the City of Chicago would have been within the scope of

employment of Defendants Bogucki, Schalk, and Montilla in February 1993.

8.     At all relevant times, Defendants Lawrence Ryan and Robert Whiteman were Chicago Police Officers employed by Defendant City of Chicago and acting within the scope of their employment.

**ANSWER:**    Defendant City admits that, in February 1993, Defendants Lawrence Ryan and Robert Whiteman were police officers employed by the Chicago Police Department, and they would have been acting as employees of the Chicago Police Department in the performance of their lawful duties in that time period.  The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests."  *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).  To the extent the conduct alleged against Defendants Ryan and/or Whiteman in plaintiff's complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officers' scope of employment.

9.    Defendants Bogucki, Sanders, Schalk, Montilla, Ryan, and Whiteman are referred to collectively as the "Defendant Officers."

**ANSWER:**    Defendant City admits upon information and belief the allegations contained in paragraph 9.

10.    The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

**ANSWER:**    Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.

### Background

11.    Mr. Jimenez was born in Chicago in 1979.  He and his sister were raised primarily by their single mother.

**ANSWER:**    Based on police department records and reports, Defendant City admits plaintiff provided information to police indicating he was born in 1979.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 11.

12.     The night of February 3, 1993 was a school night for 13-year-old Mr. Jimenez. As he had done on many prior occasions, Mr. Jimenez had dinner and slept over at his grandmother's house, surrounded by aunts, uncles and cousins.

**ANSWER:**     Based on police department records and reports, Defendant City admits plaintiff

provided information to police indicating he was 13 years old and attending Jahn School in

February 1993.  Defendant City further admits February 3, 1993 was a Wednesday.  Defendant

City is without knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations contained in paragraph 12.

13.     At approximately 4 a.m., the Defendant Officers woke Mr. Jimenez from his slumber and arrested him for the murder of a 19-year-old named Eric Morro.  The Defendant Officers took Mr. Jimenez from his grandmother's home and drove him to the police station, where he denied any knowledge of, or involvement in, the murder.  As the evidence would show, Mr. Jimenez had absolutely nothing to do with the murder with which he was charged.

**ANSWER:**     Based on police department records and reports, Defendant City admits that on

February 4, 1993, at or around 4:00 a.m., police officers including Detectives Bogucki and

Sanders arrested plaintiff at his grandmother's residence in relation to the murder of 19-year-old

Eric Morro.  Based on police department records and reports, Defendant City admits plaintiff

was transported by police from his grandmother's residence to the Area 5 police station, and that

plaintiff denied any knowledge of the Morro murder.  Defendant City further admits Judge

Biebel granted plaintiff a Certificate of Innocence on or about June 3, 2009, relative to the

offenses for which he was convicted.  Defendant City is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in

paragraph 13.

**The Crime At Issue**

14.     Earlier that evening, 19-year-old Eric Morro was shot and killed while walking down Belmont Avenue with his 14-year-old friend, Larry Tueffel.

**ANSWER:**   Based on police department records and reports, Defendant City admits on February 3, 1993, 19-year-old Eric Morro was shot and killed while walking down Belmont Avenue with 14-year-old Larry Tueffel.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 14.

15.    As Larry told the Defendant Officers, he and Mr. Morro were approached by two boys on their walk.  The boys confronted Mr. Morro about a debt he allegedly owed someone named "Leo"; the argument escalated, and one of the boys pulled out a gun and fatally shot Mr. Morro.  Larry gave the Defendant Officers physical descriptions of both boys, and said he thought he recognized the non-shooter from his school.

**ANSWER:**   Based on police department records and reports, Defendant City admits Larry Tueffel told police he and Mr. Morro were confronted by two males approximately 13-14 years old who complained about Morro owing money to someone named "Leo."  Based on police department records and reports, Defendant City further admits Tueffel told police one of the offenders produced a handgun and pointed it at Morro; Morro told the offender to put away the gun, which he did; Morro swung at the offender and missed; the offender then pulled out the handgun, pushed Morro against a wall, placed the gun against Morro's upper chest, and fired one round.  Defendant City admits the gun shot wound to Morro was fatal.  Defendant City further admits police reports indicate Tueffel provided physical descriptions of both offenders to police.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 15.

16.    Larry was walking with Mr. Morro when the boys first approached them, and was standing next to Mr. Morro when the shooting occurred.  Larry was the only eyewitness to the shooting who had the opportunity to see the boys' faces.

**ANSWER:**   Based on police department records and reports, Defendant City admits Larry Tueffel told police he and Mr. Morro were walking together when they were confronted by two males approximately 13-14 years old.  Defendant City is without knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 16 as to precisely where

Tueffel was standing when the shooting occurred.  Defendant City denies upon information and

belief the remaining allegations contained in paragraph 16.

17.     The Defendant Officers identified other individuals who were in the vicinity of
the shooting when it took place.  Not one of those alleged eyewitnesses saw the boys' faces.
None of them could identify the boys when they were initially interviewed by the Defendant
Officers.

**ANSWER:**     Based on police department records and reports, Defendant City admits police

department officers and/or detectives identified and interviewed possible witnesses to the

shooting of Mr. Morro in addition to Larry Tueffel.  Defendant City is without knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations

contained in paragraph 17.

### The False Case Against Plaintiff

18.     In the early morning hours of February 4, 1993, the Defendant Officers allegedly
received a phone call suggesting Mr. Jimenez's involvement in the shooting.  The Defendant
Officers proceeded to focus their sights singularly on Mr. Jimenez.

**ANSWER:**     Defendant City admits a witness called police about six hours after the shooting

of Mr. Morro and identified plaintiff as the shooter.  Defendant City further admits the detectives

investigating Mr. Morro's homicide subsequently arrested plaintiff for the offense.  Defendant

City is without knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations contained in paragraph 18.

19.     Rather than continue to do the police work necessary to properly solve the crime,
the Defendant Officers instead conspired amongst themselves and with others to close the case as
quickly as possible, working to prove the false hypothesis that Mr. Jimenez was guilty of the
crime.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 19.

20.     No physical evidence tied Mr. Jimenez to the crime.  Nor was any incriminating
evidence of any kind ever discovered in his possession.  Moreover, Larry's description of the
shooter bore no resemblance to Mr. Jimenez.

**ANSWER:**     Defendant City admits police department reports indicate the area of the crime

scene was searched by police on February 3, 1993, and no physical evidence from the scene was

identified or inventoried.  Defendant City is without knowledge or information sufficient to form

a belief as to the truth or falsity of the remaining allegations contained in the first sentence of

paragraph 20.  Defendant City lacks knowledge concerning the intended meaning of the vague

term "incriminating evidence" as used by plaintiff in paragraph 20, and it therefore is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in the second sentence of paragraph 20.  Defendant City admits Larry Tueffel testified

at plaintiff's criminal trial that his initial description of the shooter to police did not fit plaintiff.

Defendant City denies any inference suggested by the allegations in paragraph 20 that police had

no evidence implicating plaintiff in the February 3, 1993 shooting.  Defendant City denies the

remaining allegations of paragraph 20 to the extent inconsistent with the foregoing.

21.     To overcome those glaring deficiencies, the Defendant Officers manufactured "evidence" that falsely implicated Mr. Jimenez.  This fabrication of evidence included, but was not limited to, unlawfully manipulating witnesses to falsely implicate Mr. Jimenez by means of improper suggestiveness and outright coercion, all in violation of Mr. Jimenez's constitutional rights.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 21.

22.     For example, on February 4, 1992, at approximately 2 a.m. (just 8 hours after the shooting), two or more of the Defendant Officers went to the home of 14 year-old Larry Tueffel, where they woke him up, took him from his home, and drove him to the police station.  Over the course of several hours, while Larry was confined in a windowless interrogation room, without his parents and without counsel, the Defendant Officers yelled at Larry, told him that his denials that Mr. Jimenez was the shooter were lies, threatened him, and coerced him to implicate Mr. Jimenez in the shooting.

**ANSWER:**     Based on police department records and reports, Defendant City admits on or

around February 4, 1992, Defendant Bogucki interviewed then-14-year-old Larry Tueffel about

the Morro homicide.  Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations contained in paragraph 22.

23.     As a result of this improper and undue pressure, inflicted on a 14-year-old in the middle of the night and mere hours after he had seen his close friend murdered, Larry falsely implicated Mr. Jimenez as Eric Morro's shooter.   Larry Tueffel would not have falsely inculpated Mr. Jimenez but for the Defendant Officers' misconduct.   In addition, the Defendant Officers' police report simply noted that Larry had identified Mr. Jimenez as the shooter, intentionally omitting the Defendant Officers' extensive coercive interrogation that led to the identification.

**ANSWER:**   Based on police department records and reports, Defendant City admits on or around February 4, 1992, Defendant Bogucki interviewed then-14-year-old Larry Tueffel about the Morro homicide, and Tueffel identified plaintiff as the shooter of Mr. Morro.   Defendant City admits the police department reports indicate Tueffel identified plaintiff as the shooter of Mr. Morro.   Defendant City denies knowledge of the misconduct alleged against the Defendant Officers in this paragraph and elsewhere in plaintiff's complaint, and it denies the remaining allegations contained in paragraph 23.

24.     To further build the false case against him, the Defendant Officers procured a fraudulent identification of Mr. Jimenez using unduly suggestive and otherwise improper line-up identification procedures.   For example, at the time of the shooting, Tina Elder was standing at some distance down Belmont with her 4-year-old daughter.   She was also eight-months pregnant at the time.   The police did not obtain a statement from her at the scene of the crime, but nevertheless brought her in to view a police lineup that included Mr. Jimenez.   Before Ms. Elder was taken to view the line-up, one or more of the Defendant Officers interviewed her about what she had witnessed the night before.   She described the events that she had seen, but informed the Defendants that she had not gotten a good look at, and could not describe, the shooter.

**ANSWER:**   Defendant City denies the allegations contained in the first sentence of paragraph 24.   Defendant City admits police department records and reports indicate Tina Elder was standing on the sidewalk along Belmont Avenue approximately 5 to 10 feet from the victim at the time of the shooting.   Defendant City admits police department reports do not reflect police obtained a statement from Tina Elder at the scene, but the City states police department reports indicate Sandra Elder, mother of Tina Elder, was interviewed by police, and Sandra Elder told police she would have her daughter (Tina) contact Detective Bogucki.   Defendant City further admits police department records and reports reflect that on February 4, 1993, Tina Elder viewed

a line-up at Area 5 that included plaintiff.  Defendant City is without knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24

regarding an "interview" of Tina Elder by police before she was taken to view the line-up.  To

the extent inconsistent with the foregoing, Defendant City denies the remaining allegations of

paragraph 24.

   25.   After Ms. Elder informed the officers that she could not describe the shooter, one
or more of the Defendant Officers seated her at a desk containing two photographs: one of the
victim, and one of Mr. Jimenez.  No other photographs were shown to her.  Immediately
thereafter, Ms. Elder was taken in to view the line-up and was asked to identify the shooter; she
identified Mr. Jimenez.  Ms. Elder would not have falsely inculpated Mr. Jimenez but for the
Defendant Officers' misconduct prior to the line-up.  In addition, the Defendant Officers' police
report failed to document this manipulation.

**ANSWER:**   Defendant City admits police department records and reports reflect Tina Elder

viewed a line-up at Area 5 on February 4, 1993 that included plaintiff, and that she positively

identified plaintiff as the individual who shot Mr. Morro.  Defendant City denies knowledge of

the misconduct alleged against the Defendant Officers in this paragraph, and it therefore denies

the remaining allegations contained in paragraph 25.

   26.   Finally, the Defendant Officers deliberately and affirmatively failed to investigate
and develop information that would have established the guilt of true perpetrator of the murder.
Among the evidence that the Defendant Officers ignored and/or suppressed was the fact that a
co-defendant, Victor Romo, admitted to having been present with the shooting offender, but
repeatedly and specifically refuted the Defendants Officers' statements to him that Mr. Jimenez
was the shooter.  Victor Romo told the Defendant Officers that he had been walking that day
with a boy named Juan Carlos Torres and that Juan Carlos Torres, not Mr. Jimenez, was the
shooter.  Despite repeated attempts by one or more of Defendant Officers to get Victor Romo to
state that Mr. Jimenez was the shooter, Victor was firm in his identification of Juan Carlos
Torres as the shooter.

**ANSWER:**   Defendant City denies the allegations contained in the first sentence of paragraph

26.  Defendant City admits police department records and reports reflect Victor Romo was

interviewed by police, wherein he suggested he was present when Mr. Morro was fatally shot,

and that Juan Carlos Torres was the shooter, and that he did not know plaintiff.  Defendant City

denies the Defendant Officers "ignored and/or suppressed" any information or evidence "that would have established the guilt of the true perpetrator," which allegation is the underlying premise for the remainder of this paragraph, and it therefore denies the remaining allegations contained in paragraph 26.

27.    Indeed, within days of the shooting, Juan Carlos Torres confessed on tape to having committed the murder.  The Defendant Officers were told about that tape-recorded confession, but failed to act upon it.  Later, the tape-recorded confession was provided directly to the Defendant Officers, but they intentionally and affirmatively failed to investigate and develop evidence related to the tape-recorded confession.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of paragraph 27. Defendant City admits police department records and reports indicate on or around March 8, 1993, detectives were given a cassette tape that purportedly contained a recorded confession of Juan Carlos Torres concerning the Morro homicide.  Based on police department reports indicating the police officer detectives immediately investigated the cassette tape, Defendant City denies the remaining allegations contained in paragraph 27.

28.    In carrying out the above-mentioned activities, the Defendant Officers, acting individually and in conspiracy with each other and others, coached and manipulated witnesses, and then withheld from the prosecutors the details of how they had done so.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 28.

29.    In carrying out the above-mentioned activities, the Defendant Officers, acting individually and in conspiracy with each other and others, ignored and failed to pursue evidence that was readily available to them that established Mr. Jimenez's innocence and Mr. Torres's guilt.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 29.

30.    As complaining witnesses, one or more of the Defendant Officers also testified falsely at Mr. Jimenez's criminal trial about Mr. Jimenez's purported guilt and about the veracity of other witnesses' prior statements.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 30.

**The Malicious Prosecution**

31.     In September 1997, Mr. Jimenez stood trial for the murder of Mr. Morro.

**ANSWER:**     Defendant City admits plaintiff was tried for the murder of Mr. Morro in 1994

and November 1997.

32.     The description of the shooter that the Defendant Officers received at the scene
did not match Mr. Jimenez.  No physical evidence ever linked Mr. Jimenez to the crime.

**ANSWER:**     Defendant City admits Larry Tueffel testified at plaintiff's criminal trial that his

initial description of the shooter to police did not fit plaintiff.  Defendant City admits police

department reports indicate the scene of the shooting was searched by police on February 3,

1993, and no physical evidence from the scene was identified or inventoried.  Defendant City

denies any inference that police had no evidence implicating plaintiff in the shooting of Mr.

Morro on February 3, 1993.  Defendant City is without knowledge or information sufficient to

form a belief as to the truth or falsity of the remaining allegations contained in paragraph 32.

33.     Nevertheless, as a proximate result of the above-described misconduct on the part
of the Defendant Officers, Mr. Jimenez was convicted of the murder of Mr. Morro.  But for the
Defendant Officers' misconduct, Mr. Jimenez would have been neither prosecuted nor convicted.

**ANSWER:**     Defendant City admits plaintiff was convicted in 1994 and again in 1997 for the

first degree murder of Eric Morro and sentenced to a term of 45 years' imprisonment.  Defendant

City denies knowledge of the misconduct alleged against the Defendant Officers in plaintiff's

complaint, and it therefore denies the remaining allegations contained in paragraph 33.

34.     On December 10, 1997, Mr. Jimenez was sentenced to 45 years in prison.  All
post-trial motions and appeals were denied.

**ANSWER:**     Defendant City admits plaintiff was convicted in 1994 and 1997 and sentenced to

a term of 45 years' imprisonment for the first degree murder of Eric Morro.  Defendant City

denies the allegation "all" post-trial motions and appeals were denied.

**Plaintiff's Exoneration**

35.     Throughout his incarceration, Mr. Jimenez maintained his innocence and pursued all possible avenues to prove it.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in paragraph 35.

36.     In 2007, the State's Attorney's Office agreed to re-investigate Mr. Jimenez's case. Two years later, in 2009, the State's Attorney's Office concluded that Mr. Jimenez was innocent. The State joined Mr. Jimenez in approaching the Circuit Court of Cook County to vacate his conviction.

**ANSWER:**     Defendant City admits upon information and belief the State's Attorney's Office

joined plaintiff to present an agreed petition for relief from judgment and motion for new trial in

the Circuit Court of Cook County, Illinois.  Defendant City is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in

paragraph 36.

37.     On May 1, 2009, Mr. Jimenez's conviction and sentence were vacated.

**ANSWER:**     Defendant City admits the allegations contained in paragraph 37.

38.     On May 19, 2009, another individual – whose confession had been presented to the Defendant Officers in 1993 – was indicted for the murder of Eric Morro.

**ANSWER:**     Defendant City admits upon information and belief Juan Carlos Torres, on or

around May 19, 2009, was indicted for the murder of Mr. Morro.  Defendant City is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in

paragraph 38 that Torres' confession had been presented to the Defendant Officers in 1993.

39.     On June 3, 2009, the Chief Judge of the Criminal Division of the Circuit Court of Cook County granted Mr. Jimenez a Certificate of Innocence.

**ANSWER:**     Defendant City admits Judge Paul Biebel, Jr., granted plaintiff a Certificate of

Innocence on June 3, 2009.

**Plaintiff's Damages**

40.     Mr. Jimenez spent 16 years, 2 months and 28 days in prison for a crime he did not commit. Mr. Jimenez must now attempt to make a life for himself outside of prison without the benefit of nearly two decades of life experiences – including all of his adolescence and young adulthood – which normally equip adults for that task.

**ANSWER:**     Defendant City admits upon information and belief plaintiff was in custody or incarcerated for over 16 years in relation to his conviction for the February 3, 1993 murder of Eric Morro.  Defendant City admits plaintiff was convicted in 1994 and 1997 for the first degree murder of Eric Morro and sentenced to a term of 45 years' imprisonment.  Defendant City admits Judge Paul Biebel, Jr., granted plaintiff a Certificate of Innocence on or about June 3, 2009, relative to the offenses for which he was convicted.  Defendant City denies liability to plaintiff for any of the claims and/or damages alleged in the complaint.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 40.

41.     Additionally, the emotional pain and suffering caused by losing these 16 formative years has been substantial.  Mr. Jimenez was taken from his family when he was just 13 years old.  During his incarceration, Mr. Jimenez was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right.  He missed out on the ability to graduate from middle school with his friends, to share holidays, births, funerals, and other life events with loved ones, the opportunity to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

**ANSWER:**     Based on police department reports, Defendant City admits plaintiff provided information to police indicating he was 13 years old at the time of his arrest on February 4, 1993.  Defendant City denies liability to plaintiff for any of the claims and/or damages alleged in the complaint.  Defendant City denies knowledge of any "wrongful" conduct on the part of the Defendant Officers as alleged in the complaint.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 41.

42.     As a result of the foregoing, Mr. Jimenez has suffered tremendous damage, including physical harm and mental suffering, all proximately caused by the Defendant Officers' misconduct.

**ANSWER:**     Defendant City denies liability to plaintiff for any of the claims and/or damages alleged in the complaint.  Defendant City denies knowledge of any "wrongful" conduct on the part of the Defendant Officers as alleged in the complaint.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 42.

### Count I -- 42 U.S.C. §1983
### Violation of Due Process

43.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 43 as though fully set forth herein.

44.     As described more fully above, all of the Defendant Officers, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**     To the extent paragraph 44 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  Defendant City denies liability to plaintiff for the claim asserted in count I.  Defendant City denies knowledge or information of the misconduct alleged in previous paragraphs against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 44.

45.     In the manner described more fully above, the Defendant Officers and/or other City of Chicago employees and agents deliberately withheld exculpatory evidence – such as the police manipulation of witnesses that resulted in fabricated witness testimony – and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER:**     To the extent paragraph 45 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the

extent any remaining allegations contained in paragraph 45 can be construed against Defendant

City, those allegations are denied.  Defendant City denies knowledge or information of the

misconduct alleged in plaintiff's complaint against the Defendant Officers or "other City of

Chicago employees and agents," and it therefore denies the remaining allegations contained in

paragraph 45.

46.    The Defendant Officers' misconduct directly resulted in the unjust criminal
conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, in violation of
the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    To the extent paragraph 46 refers to or relies upon allegations made in previous

paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the

extent any remaining allegations contained in paragraph 46 can be construed against Defendant

City, those allegations are denied.  Defendant City denies knowledge or information of the

misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore

denies the remaining allegations contained in paragraph 46.

47.    As a result of this violation of his constitutional right to a fair trial, Plaintiff
suffered injuries, including but not limited to loss of liberty, physical harm, and emotional
distress.

**ANSWER:**    Defendant City denies liability to plaintiff for any of the injuries or damages

alleged in the complaint.  Defendant City further denies knowledge or information of the

misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore

denies the remaining allegations contained in paragraph 47.

48.    The misconduct described in this Count was objectively unreasonable and was
undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    Defendant City denies the allegations of paragraph 48 to the extent directed

against it.  Defendant City further denies knowledge or information of the misconduct alleged in

this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the

remaining allegations contained in paragraph 48.

49.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department employees and agents regularly failed to disclose exculpatory evidence to criminal defendants, pursued wrongful convictions through profoundly flawed investigations and coerced testimony, and otherwise violated due process in a similar manner to that alleged herein.  The above-described widespread practices, which were so well-settled as to constitute *de facto* policy in the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:**     Defendant City denies knowledge of the misconduct alleged in this count and in

plaintiff's complaint against the Defendant Officers, which alleged misconduct is the underlying

premise of this paragraph, and it therefore denies paragraph 49 to the extent based on those

allegations.   Defendant City further denies the vague "policy and practice" alleged in this

paragraph, and it therefore denies the remaining allegations contained in paragraph 49.

Defendant City specifically denies that a municipal policy or practice caused any violation of

plaintiff's constitutional rights, and it denies liability to plaintiff for any and all claims asserted in

the complaint, including count I.

50.     Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

**ANSWER:**     Defendant City denies the vague "policy and practice" alleged in "the preceding

paragraphs," and it therefore denies the allegations contained in paragraph 50.  Defendant City

specifically denies that any municipal policy or practice caused a violation of plaintiff's

constitutional rights, and it denies liability to plaintiff for any and all claims asserted in the

complaint.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count I, and for its costs and such further relief as this Court deems just.

## Count II -- 42 U.S.C. §1983
## Failure to Intervene

51.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 51 as though fully set forth herein.

52.     In the manner described above, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

**ANSWER:**     To the extent paragraph 52 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent any remaining allegations contained in paragraph 52 can be construed against Defendant City, those allegations are denied.  Defendant City denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 52.

53.     As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

**ANSWER:**     Defendant City denies liability to plaintiff for any of the injuries or damages alleged in the complaint.  Defendant City further denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 53.

54.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    Defendant City denies the allegations of paragraph 54 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 54.

55.    The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the City of Chicago's policy and practice in the manner described in the preceding paragraphs.

**ANSWER:**    Defendant City denies knowledge of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, which alleged misconduct is the underlying premise of this paragraph, and it therefore denies paragraph 55 to the extent based on those allegations.  Further, Defendant City has denied the vague "policy and practice" alleged in "the preceding paragraphs" of the complaint, and it therefore denies the remaining allegations contained in paragraph 55.  Defendant City specifically denies that any municipal policy or practice caused a violation of plaintiff's constitutional rights, and it denies liability to plaintiff for any and all claims asserted in the complaint, including count II.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count II, and for its costs and such further relief as this Court deems just.

### Count III -- 42 U.S.C. §1983
### Conspiracy to Deprive Constitutional Rights

56.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 56 as though fully set forth herein.

57.    After the murder of Mr. Morro, the Defendant Officers reached an agreement amongst themselves to frame Plaintiff for the crime and to thereby deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

**ANSWER:**     To the extent paragraph 57 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent any remaining allegations contained in paragraph 57 can be construed against Defendant City, those allegations are denied.  Defendant City denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 57.

58.     Independently, before and after Plaintiff's conviction, the Defendant Officers further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

**ANSWER:**     Defendant City denies the allegations of paragraph 58 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 58.

59.     In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     Defendant City denies the allegations of paragraph 59 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 59.

60.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise a willful participant in joint activity.

**ANSWER:**     Defendant City denies the allegations of paragraph 60 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 60.

61.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered physical harm, financial damages, and severe emotional distress and anguish.

**ANSWER:**     Defendant City denies liability to plaintiff for any of the injuries or damages alleged in the complaint.   Defendant City further denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 61.

62.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

**ANSWER:**     Defendant City denies the allegations of paragraph 62 to the extent directed against it.   Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 62.

63.     The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs.

**ANSWER:**     Defendant City denies knowledge of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, which alleged misconduct is the underlying premise of this paragraph, and it therefore denies paragraph 63 to the extent based on those allegations.   Further, Defendant City has denied the vague "policy and practice" alleged in "the preceding paragraphs" of the complaint, and it therefore denies the remaining allegations contained in paragraph 63.   Defendant City specifically denies that any municipal policy or practice caused a violation of plaintiff's constitutional rights, and it denies liability to plaintiff for any and all claims asserted in the complaint, including count III.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count III, and for its costs and such further relief as this Court deems just.

### Count IV – State Law Claim
### Malicious Prosecution

The City of Chicago is not a party defendant from which plaintiff seeks relief in count IV.  The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against the City.

64.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 64 as though fully set forth herein.

65.    The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

**ANSWER:**    Defendant City denies the allegations of paragraph 65 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 65.

66.    The Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**    Defendant City denies the allegations of paragraph 66 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 66.

67.     Moreover, the Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which the Defendant Officers possessed evidence to support probable cause to believe that an individual other than Mr. Jimenez – a man who has now been indicted for the murder – had committed the crime.  These judicial proceedings against Mr. Jimenez were instituted and continued maliciously, resulting in injury.

**ANSWER:**   Defendant City denies the allegations of paragraph 67 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 67.

68.     Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured.  The Defendant Officers also fabricated evidence by coercing false inculpatory testimony from actual and purported eyewitnesses.  The Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Plaintiff.

**ANSWER:**   Defendant City denies the allegations of paragraph 68 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 68.

69.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**   Defendant City denies the allegations of paragraph 69 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 69.

70.     As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

**ANSWER:**   Defendant City denies liability to plaintiff for any of the injuries or damages alleged in the complaint.  Defendant City further denies knowledge or information of the

misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 70.

### Count V -- State Law Claim
### Intentional Infliction of Emotional Distress

71.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 71 as though fully set forth herein.

72.     The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous.  The Defendant Officers' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:**     Defendant City denies the allegations of paragraph 72 to the extent directed against it.  Defendant City further denies knowledge or information of the misconduct alleged in this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 72.

73.     As a direct and proximate result of the Defendant Officers' actions, Plaintiff suffered and continues to suffer emotional distress.

**ANSWER:**     Defendant City denies liability to plaintiff for any of the injuries or damages alleged in the complaint.  Defendant City further denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the remaining allegations contained in paragraph 73.

74.     Because the Defendant Officers acted within the scope of their employment with the City of Chicago, Defendant City of Chicago is liable as their employer for any resulting damages and any award of attorneys' fees.

**ANSWER:**     Defendant City denies it can be liable to plaintiff for an award of attorney's fees under a state law claim such as asserted in count V.  In further response, Defendant City admits that, in February 1993, the Defendant Officers were detectives and/or police officers employed

by the Chicago Police Department, and that they would have been acting as employees of the Chicago Police Department in the performance of their lawful duties in that time period.  Based on police department records and reports, Defendant City has denied the allegations of misconduct asserted in plaintiff's complaint against the Defendant Officers, which alleged misconduct is the underlying premise of this count, and it therefore denies liability to plaintiff for any and all claims and damages asserted in the complaint, including count V.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count V, and for its costs and such further relief as this Court deems just.

### Count VI -- State Law Claim
### Civil Conspiracy

The City of Chicago is not a party defendant from which plaintiff seeks relief in count VI.  The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against the City.

75.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 75 as though fully set forth herein.

76.     As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     To the extent paragraph 76 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent any remaining allegations contained in paragraph 76 can be construed against Defendant City, those allegations are denied.  Defendant City denies knowledge or information of the misconduct alleged in plaintiff's complaint against the Defendant Officers or "other City of

Chicago employees and agents," and it therefore denies the remaining allegations contained in

paragraph 76.

77.     In furtherance of the conspiracy, the Defendant Officers committed overt acts and
were otherwise willful participants in joint activity.

**ANSWER:**     Defendant City denies the allegations of paragraph 77 to the extent directed

against it.  Defendant City further denies knowledge or information of the misconduct alleged in

this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the

remaining allegations contained in paragraph 77.

78.     The misconduct described in this Count was undertaken with malice, willfulness,
and reckless indifference to the rights of others.

**ANSWER:**     Defendant City denies the allegations of paragraph 78 to the extent directed

against it.  Defendant City further denies knowledge or information of the misconduct alleged in

this count and in plaintiff's complaint against the Defendant Officers, and it therefore denies the

remaining allegations contained in paragraph 78.

79.     As a proximate result of the Defendant Officers' conspiracy, Plaintiff suffered
damages, including severe emotional distress and anguish, as is more fully alleged above.

**ANSWER:**     Defendant City denies liability to plaintiff for any of the injuries or damages

alleged in the complaint.  Defendant City further denies knowledge or information of the

misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore

denies the remaining allegations contained in paragraph 79.

### Count VII – State Law Claim
### Respondeat Superior

80.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of

the complaint as and for its answer and response to paragraph 80 as though fully set forth herein.

81.     In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**     To the extent paragraph 81 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto. Defendant City admits that, in February 1993, the Defendant Officers were detectives and/or police officers employed by the Chicago Police Department, and that they would have been acting as employees of the Chicago Police Department in the performance of their lawful duties in that time period.  Based on police department records and reports, Defendant City has denied the allegations of misconduct asserted in plaintiff's complaint against the Defendant Officers, which alleged misconduct is the underlying premise of this count, and it therefore denies liability to plaintiff for any and all claims and damages asserted in the complaint, including count VII.

82.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**     Defendant City denies paragraph 82 presents an accurate statement of Illinois law, and it therefore denies the allegations contained therein.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on count VII, and for its costs and such further relief as this Court deems just.

### Count VIII - State Law Claim
### Indemnification

83.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 83 as though fully set forth herein.

84.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:**     Defendant City admits the existence of 745 ILCS 10/9-102, but it denies any

liability to plaintiff pursuant to that statute.

85.     The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**     Defendant City admits that, in February 1993, the Defendant Officers were

detectives and/or police officers employed by the Chicago Police Department, and that they

would have been acting as employees of the Chicago Police Department in the performance of

their lawful duties in that time period.   Based on police department records and reports,

Defendant City has denied the allegations of misconduct asserted in plaintiff's complaint against

the Defendant Officers, which alleged misconduct is the underlying premise of this paragraph,

and it therefore denies the remaining allegations contained in paragraph 85.   Defendant City

denies liability to plaintiff for any and all claims and damages asserted against it in the

complaint, including count VIII.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any

judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and

against plaintiff on count VIII, and for its costs and such further relief as this Court deems just.

## AFFIRMATIVE DEFENSES

Defendant, City of Chicago, without prejudice to its denials and all other statements in its

answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states as follows:

1.     To the extent any individual employees of the City of Chicago or its police

department are not liable as alleged in the complaint, the City would not be liable.   745 ILCS

10/2-109.

2.      Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.      Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

5.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Punitive damages cannot be imposed against a municipality in a §1983 action.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.  745 ILCS 10/2-102.

6.      As to plaintiff's state law claims, Defendant City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

7.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to police reports and court records, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

8.      To the extent count I is intended to suggest a *Brady* violation based upon the Defendant Officers' alleged withholding of information that they fabricated or falsified reports and evidence, such a claim would be improper; allegations that law enforcement officers failed to provide favorable or exculpatory information in the form of "disclosing" or admitting fabrications occurred do not establish a *Brady* violation for purposes of a due process claim.  *See Carvajal v. Dominguez*, 542 F.3d 561, 568 (7th Cir. 2008); *see also Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (The plaintiff "essentially seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is 'suppressing' evidence of the truth by making the false statement.  This court has already foreclosed this extension"); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police testify truthfully; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies").

9.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

### **JURY DEMAND**

Defendant City of Chicago respectfully requests a trial by jury.


Dated: April 9, 2010                              Respectfully submitted,


                                          By: s/ Paul A. Michalik_____
                                              One of the Attorneys for Defendant,
                                              CITY OF CHICAGO

Terrence M. Burns
Harry N. Arger
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2010, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Arthur Loevy
Jon Loevy
Rachel Steinback
Russell R. Ainsworth
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
312.243.5900

Locke E. Bowman, III
MacArthur Justice Center
Northwestern University School of Law
357 E. Chicago Ave.
Chicago, IL 60611
312.503.0844
312.503.1272 (fax)
bowman@law.northwestern.edu

Stuart J. Chanen
Lisa Castle
Valorem Law Group LLC
35 E. Wacker Drive
Suite 2900
Chicago, IL 60601
312.676.5480
stuart.chanen@valoremlaw.com

Andrew M. Hale
Avi T. Kamionski
Andrew M. Hales & Associates, LLC
53 W. Jackson Blvd.
Suite 1800
Chicago, IL 60604
(312) 341-9646
(312) 341-9656 (fax)

s/ Paul A. Michalik
_____
Paul A. Michalik