IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

People of the State of Illinois,               )
                                               )
                    Plaintiff,                 )      No. 10300221401
                                               )      09-CR-09111
       vs.                                     )
                                               )      Judge Paul P. Biebel, Jr.
Juan Carlos Torres                             )
                                               )
                    Defendant.                 )

## CHICAGO POLICE OFFICERS' ATTORNEY'S MOTION TO APPRISE THE COURT OF EVIDENCE EXONERATING JUAN CARLOS TORRES OF ANY INVOLVEMENT IN THE MURDER OF ERIC MORRO

Andrew M. Hale & Avi T. Kamionski, attorneys for Defendant Chicago Police Officers Jerome Bogucki, Raymond Schalk & Mark Sanders in *Jimenez v. City of Chicago, et al.*, Case No. 09 C 8081 (N.D. Ill.) ("Defendant Officers"), hereby bring this motion to disclose to the State, Defense and this Court evidence exonerating Juan Carlos Torres of the murder of Eric Morro and state as follows:

### Introduction

Juan Carlos Torres is currently in Cook County Jail and is charged with the murder of Eric Morro. Torres has been in jail for over two years for a crime he did not commit. Prior to prosecuting Torres, the State of Illinois prosecuted Thaddeus Jimenez for this murder. Jimenez was convicted twice by a jury and spent 16 years in prison until he was released in 2009. That same year, Jimenez filed a Section 1983 lawsuit against Defendant Officers making several misconduct allegations. After Jimenez was released the State arrested and charged Torres with the murder.

The State's case against Torres consists of two main pieces of evidence: 1. An alleged audiotaped confession of Torres taken by Ezequiel Romo, father of Victor Romo, Jimenez's co-

defendant in 1994 and 1997; 2. The new story of Larry Tueffel – who testified twice that Jimenez was the shooter – that Torres committed the murder.

We represent the Defendant Officers in connection with the Section 1983 lawsuit. As a part of discovery we have uncovered evidence that Jimenez was the actual shooter of Morro as opposed to Torres. We also investigated the so-called audio tape confession and Tueffel's extensive psychiatric background. The tape was analyzed by a forensic audio expert. Tueffel's extensive medical records were reviewed and analyzed by a psychiatrist. Both the audio tape and Tueffel are not reliable. Here is a brief explanation why:

### Discussion

**A. Audio Tape**

As explained in the attached expert report, the audio tape – which was found inadmissible at both of Jimenez's criminal trials – is not consistent with the account of the taping presented by Ezequiel Romo. Forensic Audio Tape Report, attached hereto as Exhibit 1. On multiple occasions, including under oath at a motion *in limine* hearing before Jimenez's second trial, Ezequiel Romo has stated that he recorded Torres's alleged confession using a voice-activated tape recorder hidden in his jacket pocket and that the conversation took place in a restaurant with only himself and Torres present. Motion *in Limine* Testimony at 10:16-11:12, 17:13-16, attached hereto as Exhibit 2. Every one of these claims is completely inconsistent with the audiotape. Forensic evaluation of the tape has also uncovered that the tape was a complete set up. Although recorded in Spanish, at the beginning of the tape you can clearly hear a voice in English state "going to tape now." Moreover, as explained in the second attached expert report, the speaker alleged to be Torres has a Mexican dialect. Dialect Expert Report, attached hereto as Exhibit 3.

The Torres family is Puerto Rican. State's Attorney Reinvestigation Report, attached hereto as Exhibit 4.

**B.    Larry Tueffel**

Larry Tueffel identified Jimenez as the shooter at both of Jimenez's criminal trials. In 2006, he gave a new story to Jimenez's post-conviction attorneys and claimed that Juan Carlos Torres shot Eric Morro. Tueffel was diagnosed as a paranoid schizophrenic in 2001 or 2002. Larry Tueffel Deposition at 190:19-24, attached hereto as Exhibit 5. This diagnosis was made several years after his testimonies at Jimenez's criminal trials, but before his 2006 recantation. In fact, Tueffel recanted his testimonies while he was being treated for schizophrenia at Somerset Place. Ex. 5 at 363:11-364:2. As explained in the attached expert report, Tueffel's paranoid schizophrenia makes him a highly unreliable reporter. Forensic Psychiatric Report, attached hereto as Exhibit 6. For example, Tueffel's paranoid schizophrenia causes him to have problems distinguishing fantasy from reality, and makes him especially susceptible to suggestion. Ex. 6 at pp. 54-56.

**C.    Several Witnesses Saw Thaddeus Jimenez Kill Eric Morro**

In addition, many witnesses still maintain that Thaddeus Jimenez committed the murder.

Phil Torres: Phil Torres testified in 1994 and again in 1997 that Jimenez shot Eric Morro. To this day, Phil Torres maintains that he witnessed Jimenez shoot Eric Morro. Phil Torres Deposition at 82:8-11, attached hereto as Exhibit 7.

Tina Elder: Tina Elder testified in 1994 and again in 1997 that Jimenez shot Eric Morro. To this day, Tina Elder maintains that she witnessed Jimenez shoot Eric Morro. Tina Elder Deposition at 104:23-105:2, attached hereto as Exhibit 8.

<u>Sandra Elder</u>: Sandra Elder maintains that she witnessed Jimenez shoot Eric Morro. Sandra Elder Deposition at 82:21-83:1, attached hereto as Exhibit 9.

<u>Donna Cosmen</u>: Donna Cosmen has testified that she witnessed Jimenez running from the scene of the shooting. Donna Cosmen Deposition at 19:22-20:1, 21:19-22, attached hereto as Exhibit 10.

### D. Public Defender's Office Is In A Conflict Relationship with Juan Carlos Torres

Additionally, we also feel compelled to bring to this Court's attention both the *per se* and actual conflict with the Public Defender's office representing Juan Carlos Torres. Rule of Professional Conduct 1.10 explains that "[n]o lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by Rules 1.7, 1.8(c) or 1.9 . . ." Under Rule 1.9 a "lawyer who has formerly represented a client in a matter shall not thereafter: (1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or (2) use information relating to the representation to the disadvantage of the former client."

In 1994, the Public Defender's office represented Thaddeus Jimenez in his first criminal trial. At the time, Jimenez was accused of the murder of Morro. In fact, Jimenez, through the Public Defender's office, argued that Torres committed the murder. Now, after Jimenez's release, this same office is representing Torres. This time around the Public Defender's office must make the exact opposite argument: namely, Torres is innocent and Jimenez is guilty. Under Rule 1.9 and 1.10, the Public Defender's office cannot represent a client whose interests are materially adverse to a former client. Here, Torres and Jimenez are pointing fingers at each other. Their

defense of Torres is materially adverse to Jimenez – specifically his financial interests in his civil suit. An acquittal of Torres will hurt Jimenez's claim that Torres did it. It also puts Torres in a bad spot. How is he comforted knowing that his lawyers are partners with lawyers who once argued that Torres killed Morro. To avoid this issue, the rules prohibit even lawyers from the same office to represent clients who have adverse interests. *See* Rule 1.10.

Moreover, even if this court does not believe there is an actual conflict, there is unquestionably a *per se* conflict. The Appellate Court's discussion in *People v. Munson*, 265 Ill. App. 3d 765, 769 (3rd Dist. 1994) is helpful in explaining *per se* conflicts:

> In cases of *per se* conflicts, defense counsel had some tie to a person or entity-either a client, employer or counsel's own previous commitments-which would benefit from an unfavorable verdict for the defendant. Defense counsel's knowledge that a favorable result would conflict with the interests of his client, employer or self could subliminally affect counsel's performance in ways difficult to detect and demonstrate. In addition, a *per se* conflict created the possibility that an attorney would be unnecessarily subjected to later charges that his representation was not completely faithful.

*See also In re Darius G.*, 406 Ill. App. 3d 727, 738 (2d Dist. 2010) ("the *same* attorney may not during the proceedings appear on behalf of *different* clients"). When the same attorney appears on behalf of different clients, "[p]rejudice is presumed and respondent need not demonstrate that the conflict contributed to the judgments entered against her." *Id.* Under the clear rule set forth in *Darius G.*, given the Public Defender's office's representation of an adverse client (Jimenez) and interests (Torres is guilty), prejudice is presumed. Therefore, given the actual and/or *per se* conflict, Torres should be assigned his own private counsel[1].

## Conclusion

We don't want to see an innocent man remain in jail. The above evidence demonstrates

---

[1] To be clear, we do not seek to represent Torres and have no intention of doing so. We are not criminal lawyers.

that the case against Juan Carlos Torres is extremely weak. The audiotape is clearly not a confession by Torres. There are, at least, four witnesses who will eventually testify in support of Torres that they saw Jimenez commit the murder. The State's witness, Tueffel, has been diagnosed as a paranoid schizophrenic and previously testified under oath -- at two trials -- that Jimenez committed the murder. His testimony is unreliable.

Based on the evidence we are providing to the Court and all parties in this case, it is clear the State will be unable to meet their burden and therefore, Juan Carlos Torres should be released from jail immediately. Additionally, Juan Carlos Torres should be provided with private outside counsel who can advocate on his behalf clear of any conflicts.

Respectfully Submitted,

Attorney for Defendant Officers

Andrew M. Hale
Avi T. Kamionski
Andrew M. Hale & Associates
53 W. Jackson Blvd., Suite 1800
Chicago, IL 60604
(312) 341-9646